Good morning, Your Honor. May it please the Court, my name is Jack Humes and I have the privilege of representing the appellant and cross-appellee Teresa Leonard in this matter. This appeal concerns whether the denial of long-term disability benefits to my client after they were paid for over a year was an abuse of discretion for several reasons. Let me just get to the heart of this in a minute. This was after a bench trial and the district court made credibility findings, you know, that they were contrary to the plaintiff's position. There was a dispute over whether letters were sent, whether they were received, whether they complied with the requirements, and the district court, unfortunately, your client made adverse credibility findings. You're not suggesting we can reverse those findings, are you? I'm asserting that in the context of this case that those findings do not preclude this court from finding an abuse of discretion and let me explain why. I believe what your Honor is referring to was the second functional capacity examination authorization that Ms. Leonard contended that was sent and that MetLife never acted on. MetLife claimed that there was, you know, a conspiracy between Ms. Leonard, her lawyers, and her doctor to manufacture evidence. My point is that it functional capacity examination doesn't matter in this case because prior to that their own doctor did an examination of Ms. Leonard and found, gave her a score of 2 on the scale of 12 for functionality. That's a 16% functionality, okay, and that was done by a medical doctor as opposed to the functional capacity examination that MetLife intended to do, which was not by a doctor, and which courts have recognized that a functional capacity examination is not effective at all to either prove or disprove pain. And let me explain why. For example, if Ms. Leonard had broken her arm and it didn't heal correctly and she had atrophy or a range of motion that was inhibited, then the examination to determine what percentage and, you know, where she did is purely a mechanical one. But that's not what Ms. Leonard's problem was. Her problem is debilitating pain, and courts have held that a functional capacity examination is ineffective to measure debilitating pain, and that's why we don't believe that. First of all, the second FCE was completely unnecessary, and MetLife had information that indicated that she was totally disabled. Mr. Leonard, I guess you represented, I mean, Mr. Humes, you represented Ms. Leonard below, is that correct? Yes, I did, I represented her. I mean, you said, at least from the record, that you sent the FCA authorization to MetLife in September of 2011? Yes, I did. But you didn't contact MetLife until almost a year later in August of 2012 to inquire about the status of her action. Why such a delay? The press of other business, I acknowledge that. That is correct, I did not contact them until months later. And I guess it's your position that Ms. Leonard chose not to send updated medical records for the NE occupation period, and to not appeal her denial solely because she thought that MetLife had all the information they needed? They had all of her medical records. There was nothing additional to provide. Well, it's a more strict standard. I understand, from my understanding, it's a more strict standard for the second period than it is for the first. And you didn't think that she needed to update her medical records? Her medical records were up to date. There was nothing additional to provide. Counsel, what do we do about the fact that the trial court concluded, if I remember correctly, that you didn't send the notice in September? Now, I understand you're saying to us, you did, but the trial court found that you didn't. Do we have to find that was clear error for you to prevail in this case? No, you do not. Why not? Because that finding is completely irrelevant, because the functional capacity examination that was the subject of that authorization is completely ineffective to make an evaluation of her condition. Look, I thought under the terms of the plan, your client had 180 days to appeal the decision, correct? That is correct. And that didn't happen here, correct? Well, it was our contention that we had sent it. Okay, but that gets back to what was my question. And I was about to address that. Even if the court found that we didn't send... Which the court did. Okay. We believe that an exception to the exhaustion of administrative remedy applies here, because MetLife... The futility exception. Futility exception, yes. Because MetLife ignored its own doctor, it did not conduct a complete examination based on the information it had, and it violated its own claims guidelines. But earlier in the case, when your client sought relief, and I remember there was a strongly worded letter that I think she wrote, I read that letter, that MetLife did grant something, correct? Previously, when there was pushback against MetLife, didn't MetLife grant some relief? It reopened its investigation, yes, it did. So how can we find that filing an appeal would have been futile when previously, when your client took the strong action letter that she wrote, and MetLife granted her some relief? How can we say it would have been impossible? Well, in addition to all of that, if the court would look at the actual denial letter, MetLife... There was a number of problems with that denial letter. First of all, the denial letter has the wrong standard in it. They said they were denying her benefits based on her inability to do her own job, not any job. So they misinformed her about the standard. Second of all, they never told her what information she needed. But isn't that why you appeal? I mean, if the standard, if they give you the wrong reason, that's why you appeal it. Of course, but you're trying to make a certain hurdle, correct? In this case, MetLife informed her of the wrong hurdle. Well, all the more reason, though, that you might have been successful on appeal if you'd tried. And especially in this case, as Judge Owens, I think, has pointed out, that previously, you know, and during the prior period, they did reverse their decision. So I think your efforts to try to argue that it would have been futile in the second period, I'm just trying, I'm struggling to understand your rationale. Well, the only additional information that we could have provided during that 180-day period was information that MetLife kept from Ms. Leonard. They failed to inform her about... Did you argue that in your brief here? Yes, I did. I didn't see that. Okay, go ahead. They failed to inform her about Dr. Rodas' findings, or give her a copy of his report. And she had no, she did not have the claims guidelines. And she wouldn't have been able to get the claims guidelines until these proceedings. And when did you find that out? The claims guidelines? Well, the information that was withheld from her, that you're alleging was withheld. We found it, we found it all out during the, in the district court, during the proceedings in the district court. She had requested a copy of her file. It was not provided. When did they not provide it? I'm just, they're saying all these things that I think would have gone, if you had appealed, their decision might have made a difference. And so that it goes against your futility argument. I'm not quite sure on the timing of all that, but just everything you're saying, if it bore out, then I think it only would go against your futility argument. Well, during the first time, the first time she saw it in the administrative remedy, she demanded a copy of her file. She got, you know, those, there were, it turns out there was a lot of stuff missing. Okay? But those were the most significant things. The, there were no additional medical records to provide at that point. And no reason to believe that, that, you know, requesting the records again would have resulted in anything different. All right, thank you. I'm sorry to interrupt your counsel. May it please the court, Ms. DeMaria, appearing on behalf of MetLife. I want to briefly address some of the statements that counsel has made, which I believe to be incorrect. He describes Dr. Rodas, who did the exam in April of 2011, is MetLife's doctor, and that is not correct. The evaluation of the record shows that he was an on-site doctor who was at Raytheon. We never really did determine who brought Dr. Rodas into the picture, but he was at Raytheon and he performed the exam. He was not a doctor that was retained by MetLife. I also want to point out that he, Mr. Humes has argued that MetLife failed to inform Ms. Leonard about the Dr. Rodas examination. That is belied by the May 2011 letter. It's in the record at page 271. When MetLife determined to reinstate her benefits for the entire ONOC period, they explicitly told her, and I'm going to quote, we received the April 28th, 2011 with Dr. Rodas. And it is noted your functional ability is compromised. So she was advised that MetLife was looking at that report. I had never heard that this report was not provided to her in the file, but she was well aware. She attended the exam, she know what happened there. So they were not withholding information from Ms. Leonard. He also said that in MetLife's adverse benefit determination letter in August of 2011, that they applied the wrong standard. That too is incorrect, and if you look at the letter in the record, it explicitly explained to her that there was a change in the definition of disability, and that based upon MetLife's review, they had determined that she did not meet that new definition of disability. So I respectfully disagree that they somehow misled her. It is also somewhat unbelievable that Ms. Leonard has what is described as a debilitating condition, and she had no updated medical information to provide for MetLife. They made clear in the May 2011 letter, they listed nine bulleted items that they wanted to evaluate in order to determine her continuing entitlement to benefits, and that specifically included updated medical from January 2011 up through the present. It wasn't until this lawsuit was filed that we learned that there were, in fact, some additional medical records that they tried to admit from Dr. Pritchard, it's a May 2011 report. I would submit the district court correctly declined to consider that because it was not part of the administrative record. It had never been provided to MetLife. Additionally, another piece of information that was provided a year later was the Social Security Administration had actually made a determination that she was entitled to Social Security disability benefits. That's updated information that could have been provided to MetLife during the appeals period, and that did not happen. So again, I think the record belies his contention that there was no updated medical information to be provided. It also belies his contention that MetLife was simply asking them to resubmit what it already had. They had a functional capacity evaluation that was a year old. They were entitled to ask for updated medical records. They complied with their guidelines, which required them to get an authorization from the attending physician before doing that. And they never got that. I understand that Mr. Humes claims it was sent in, but there's no record of it. And the district court correctly found that his contention it was sent in was not credible. I want to address the exhaustion issue as well. There's no dispute that there was no appeal sent to MetLife. Ms. Leonard basically has argued that there's two reasons why she was not required to comply with that procedure. The first was futility. The DS court was very clear, the Ninth Circuit stated, the purpose of the futility exception is to avoid having a claimant pursue an administrative review that is demonstrably doomed to fail. And MetLife submits that she has not shown it was doomed to fail. First, she went through the appeals process during the first 18 month on occupation period. MetLife conducted a thorough appellate review, and even after receiving some questionable medical evidence, they reinstated benefits, they changed their positions. So there's been no evidence that had MetLife been given the opportunity to conduct an administrative review that its position would have clearly and positively remained unchanged. The guidelines in the record at 574, 575, they show the process that MetLife would have gone through had an appeal been submitted. They would have obtained updated medical. They could have gotten an updated independent physician consultant review. And that review would have been conducted by persons who had not been involved in the initial claim. So MetLife submits that there's no evidence at all that an appeal would have been futile in this case. I do wanna also address the argument that MetLife's failure to comply with internal claims guidelines somehow excused the requirement that she go through the appeals process. First, it's incorrect that MetLife did not comply with its guidelines, and I wanna get to that point. But more importantly, the regulation that permits or excuses a claimant from exhausting the administrative remedies is very clear. That's at 29 CFR section 2560.501-3 subsection L. And it reads, and I quote, if a plan fails to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits. This exception has no application here. The plan unquestionably has guidelines in place. There's six pages at 784 to 789 that show the claims procedures that it has in place for initial review and for administrative review. Those procedures are designed to provide a decision on the merits. And there's no case that holds the procedural irregularity that Ms. Leonard is complaining of. The lack of a vocational review would excuse her from the exhaustion requirement. I'm on another issue. I'm just curious, just before your time ends up here, why you're cross-appealing if the district court judgment was in your favor. I don't know. I'm just curious why you're cross-appealing on the statute of limitations issue. What was the contractual limitations period? And correctly, possibly, alternatively, judgment could have been entered in our favor on that ground. But you weren't aggrieved in any way by the final order of the court, were you? No. So isn't it really asking the court, that's another reason why you should win? Yes, and on that issue we would, unless there's specific questions about the merits, we would stand on our papers on that. But if we were to dismiss that cross-appeal because you're not appealing the judgment, you're appealing a particular ruling, which normally we don't do that here. I take it your argument would be we can dismiss the cross-appeal, but you should still prevail on the other arguments that you've made in your brief that the district court found. Yes, that is correct. I briefly want to just, unless your honor has another question. I have no other questions. I want to briefly address two cases that were cited in the papers. A little over a minute to do them briefly. I can do it very briefly. Vought versus Scottsdale. The court in that case found that the claimant had effectively invoked the internal review procedures of the plan. The plan failed to consider that request for an appeal. Again, that's not the case here. MetLife never got an appeal. Had they gotten it, they would have considered it. The case of Bilyeu versus Unum, an adverse determination letter in that case was sent out giving the claimant two options. You can submit an appeal or you can give us new information. The claimant opted to give new information. The claims administrator considered that information, internally decided it did not change its opinion, but failed to advise the claimant of that. And also failed to advise the claimant that even though a formal appeal had not been submitted, that the time for doing so was running. Again, that's not the case here. MetLife clearly communicated to Ms. Leonard the appeals procedure. She understood that procedure because she had gone through it before. And neither one of those grounds would provide an exception for her to exhaust the plan's requirement in this case. Therefore, MetLife respectfully submits that the district court's judgment should be affirmed on the exhaustion defense, as well as the finding that it abused its discretion. Thank you. Thank you. Give you a minute for rebuttal. First of all, with regard to the ability to provide additional medical records in counsel's representation that we tried to in the district court proceedings, it was a single page letter. It was not medical records. It was a single page letter from a doctor that was substantially the same as the letter that was already in the administrative record from a year earlier. And the denial letter specifically talked about being disabled from your job. So the denial is based on her, apparently she can do some medical record review that says that she could have done some job with accommodations. The problem is, MetLife never determined what accommodations she could do, and whether those accommodations made her unemployable. MetLife has claims procedures in order to determine that. And that with those claims guidelines required MetLife to go speak with a vocational expert to find out if those accommodations would have made her unemployable. They simply did not do that. And we believe under the Vaught versus Scottsdale Healthcare Corporation case that that's another reason why the administrative remedy could be deemed exhausted. Thank you, counsel. Thank you. Case just argued will be submitted.
judges: Reinhardt, Murguia, Owens